JUDGE TORRES

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

15 CV 1221

| | |
|---|---|
| LAWRENCE J. LONG, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MIMEDX GROUP, INC., PARKER H. PETIT, and MICHAEL J. SENKEN,<br><br>Defendants. | **Civil Action No.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

RECEIVED
FEB 19 2015
U.S.D.C. S.D.N.Y.

Plaintiff Lawrence J. Long ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding MiMedx, Inc. ("MiMedx" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased MiMedx securities between February 26, 2014 and December 31, 2014, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' (defined below) violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against the Company and certain of its top officials.

2. MiMedx is a medical device company. The Company is focused on developing and marketing biomaterials for soft tissue repair, such as tendons, ligaments, and cartilage, as well as other biomaterial based products for other medical applications.

3. On December 31, 2014, after the close of trading, the Company issued a press release announcing the receipt of a civil subpoena from the Office of Inspector General ("OIG") of the Department of Health and Human Services ("HHS"). In the press release, the Company stated, in part:

> MiMedx Group, Inc. (NASDAQ: MDXG), the leading regenerative medicine company utilizing human amniotic tissue and patent-protected processes to develop and market advanced products and therapies for the Wound Care, Surgical, Orthopedic, Spinal, Sports Medicine, Ophthalmic and Dental sectors of healthcare, announced today that it has received a subpoena from the Office of Inspector General ("OIG") of the Department of Health and Human Services ("HHS") in connection with a civil investigation into matters primarily related to the Company's sales and marketing activities.
>
> MiMedx intends to cooperate fully with the government in its investigation, and the Company will attempt to expedite the process. MiMedx has already begun the process of producing the responsive documents. To the Company's knowledge, no proceedings have been initiated at this time. The Company cannot predict whether any proceeding might be initiated.

4. Moreover, the Company announced the same day that it had filed a federal tortious interference lawsuit against one of its competitors, Organogenesis, Inc. ("Organogenisis"), for tortious interference of contract, alleging that it had interfered with Mimedx's dealings with the Veterans Administration. Within a matter of weeks, Mimedx voluntarily dismissed the lawsuit.

5. On this news, MiMedx securities declined $1.79 per share, or more than 15%, to close at $9.74 per share on January 2, 2015, the next trading day.

6. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company was in violation of federal regulations by engaging in improper marketing and sales practices; and (2) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

7. Indeed, according to confidential sources, including former Regional Territory Sales Managers of the Company, MiMedx senior management routinely demanded that MiMedx Sales Mangers add extra products to customers' open purchase orders in order to boost sales. For example, one former Sales Manager explained that once a client agreed to purchase MiMedx's products, the client and the Company set up an open or standing purchase order to facilitate future orders. Management then pressured the Sales Manager to pad the purchase order with extra products. If a client ordered two or three devices, the Sales Manager was pressured to "up that order" to five or six. According to the former Sales Manager, "[i]f the client ever questioned the order or invoice, I was told to tell them that I added more products because I knew they would need more product in the future."

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

11. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b) as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

12. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13. Plaintiff, as set forth in the attached certification, purchased MiMedx securities at artificially inflated prices during the Class Period and has been damaged upon the revelation of the alleged corrective disclosures.

14. Defendant MiMedx is a Florida corporation with its headquarters located at 1775 W. Oak Commons Court, NE, Marietta, Georgia 30062. The Company's common stock is traded on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "MDXG."

15. Defendant Parker H. Petit ("Petit") has served at all relevant times as the Company's Chairman of the Board of Directors and Chief Executive Officer.

16. Defendant Michael J. Senken ("Senken") has served at all relevant times as the Company's Chief Financial Officer.

17. The defendants referenced above in ¶¶ 14 and 15 are sometimes referred to herein as the "Individual Defendants." MiMedx and the Individual Defendants are referred to collectively as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18. MiMedx is an integrated developer, manufacturer and marketer of patent protected regenerative biomaterial products and allografts processed from human amniotic membrane. The Company is the leading supplier of allografts processed from amniotic tissue, having supplied over 120,000 allografts to date for application in the Surgical, Orthopedic, Spinal, Wound Care, Ophthalmic, and Dental segments of healthcare. The Company's biomaterial platform technologies include the device technologies HydroFix and CollaFix, and its tissue technologies, AmnioFix and EpiFix.

### Materially False and Misleading Statements Issued During the Class Period

19. On February 28, 2014, the Company issued a press release announcing its financial results for the quarter and year ended December 31, 2013. For the quarter, the Company reported a net loss of $1.43 million, or ($0.01) diluted EPS on revenue of $17.99 million, compared to a net loss of $1.61 million or ($0.02) diluted EPS on revenue of $10.51 million for the same period in the prior year. For the year, the Company reported a net loss of

$4.11 million, or ($0.04) diluted EPS on revenue of $59.18 million, compared to a net loss of $7.66 million or ($0.09) diluted EPS on revenue of $27.05 million for the prior year.

20. On March 4, 2014, the Company filed an annual report for the period ended December 31, 2013 on a Form 10-K with the SEC signed by, among others, defendants Petit and Senken, and reiterated the Company's previously reported financial results and financial position. In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants Petit and Senken stating that the financial information contained in the Form 10-K was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

21. In addition, the Form 10-K contained the following statement regarding the Company's compliance with federal and state sales and marketing regulations:

> ***We and our sales representatives, whether employees or independent contractors, must comply with various federal and state anti-kickback, self-referral, false claims and similar laws, any breach of which could cause a material adverse effect on our business, financial condition and results of operations.***
>
> Our relationships with physicians, hospitals and other healthcare providers are subject to scrutiny under various federal anti-kickback, self-referral, false claims and similar laws, often referred to collectively as healthcare fraud and abuse laws. Healthcare fraud and abuse laws are complex, and even minor, inadvertent violations can give rise to claims that the relevant law has been violated. Possible sanctions for violation of these fraud and abuse laws include monetary fines, civil and criminal penalties, exclusion from federal and state healthcare programs, including Medicare, Medicaid, Veterans Administration health programs, workers' compensation programs and TRICARE (the healthcare system administered by or on behalf of the U.S. Department of Defense for uniformed services beneficiaries, including active duty and their dependents, retirees and their dependents), and forfeiture of amounts collected in violation of such prohibitions. Certain states have similar fraud and abuse laws, imposing substantial penalties for violations. Any government investigation or a finding of a violation of these laws would likely result in a material adverse effect on the market price of our common stock, as well as our business, financial condition and results of operations.

22. On April 25, 2014 the Company issued a press release announcing its financial results for the quarter ended March 31, 2014. The Company reported a net loss of $0.92 million, or ($0.01) diluted EPS on revenue of $19.56 million, compared to a net loss of $1.62 million or ($0.02) diluted EPS on revenue of $11.56 million for the same period in the prior year.

23. On May 12, 2014, the Company filed a quarterly report for the period ended March 31, 2014 on a Form 10-Q with the SEC signed by defendant Senken, which reiterated the Company's previously reported financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by defendants Petit and Senken stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

24. On July 28, 2014, the Company issued a press release announcing its financial results for the quarter ended June 30, 2014. The Company reported a net loss of $0.39 million, or ($0.00) diluted EPS on revenue of $25.57 million, compared to a net loss of $0.76 million or ($0.01) diluted EPS on revenue of $13.52 million for the same period in the prior year.

25. On August 11, 2014, the Company filed a quarterly report for the period ended June 30, 2014 on a Form 10-Q with the SEC signed by defendant Senken, which reiterated the Company's previously reported financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by defendants Petit and Senken stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

26. On October 30, 2014, the Company issued a press release announcing its financial results for the quarter ended September 30, 2014. The Company reported net income of $3.70

million, or $0.03 diluted EPS on revenue of $33.52 million, compared to a net loss of $0.31 million or ($0.00) diluted EPS on revenue of $16.12 million for the same period in the prior year.

27. On November 10, 2014, the Company filed a quarterly report for the period ended September 30, 2014 on a Form 10-Q with the SEC signed by defendant Senken, which reiterated the Company's previously reported financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by defendants Petit and Senken stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

28. The statements referenced in ¶¶ 19 – 27 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them that: (1) the Company was in violation of federal regulations by engaging in improper marketing and sales practices; and (2) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

29. On December 31, 2014, after the close of trading, the Company issued a press release announcing the receipt of a civil subpoena from the Office of Inspector General ("OIG") of the Department of Health and Human Services ("HHS"). In the press release, the Company stated, in part:

> MiMedx Group, Inc. (NASDAQ: MDXG), the leading regenerative medicine company utilizing human amniotic tissue and patent-protected processes to develop and market advanced products and therapies for the Wound Care, Surgical, Orthopedic, Spinal, Sports Medicine, Ophthalmic and Dental sectors of healthcare, announced today that it has received a subpoena from the Office of Inspector General ("OIG") of the Department of Health and Human Services ("HHS") in connection with a civil

> investigation into matters primarily related to the Company's sales and marketing activities.
>
> MiMedx intends to cooperate fully with the government in its investigation, and the Company will attempt to expedite the process. MiMedx has already begun the process of producing the responsive documents. To the Company's knowledge, no proceedings have been initiated at this time. The Company cannot predict whether any proceeding might be initiated.

30. Moreover, the Company announced the same day that it had filed a federal tortious interference lawsuit against one of its competitors, Organogenisis, for tortious interference of contract, alleging that it had interfered with Mimedx's dealings with the Veterans Administration. Within a matter of weeks, Mimedx voluntarily dismissed the lawsuit.

31. According to confidential sources, including former Regional Territory Sales Managers of the Company, MiMedx senior management routinely demanded that MiMedx Sales Mangers add extra products to open purchase orders in order to boost sales. For example, one former Sales Manager explained that once a client agreed to purchase MiMedx's products, the client and the Company set up an open or standing purchase order to facilitate future orders. Management then pressured the Sales Manager to pad the purchase order with extra products. If a client ordered two or three devices, the Sales Manager was pressured to "up that order" to five or six. According to the former Sales Manager, "[i]f the client ever questioned the order or invoice, I was told to tell them that I added more products because I knew they would need more product in the future."

32. On this news, MiMedx securities declined $1.79 per share, or more than 15%, to close at $9.74 per share on January 2, 2015.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

otherwise acquired MiMedx securities during the Class Period (the "Class"); and were damaged upon the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

34. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, MiMedx securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by MiMedx or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

36. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of MiMedx;
- whether the Individual Defendants caused MiMedx to issue false and misleading financial statements during the Class Period;
- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of MiMedx securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

39. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- MiMedx securities are traded in efficient markets;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ, and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold MiMedx securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

40. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

**(Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

41. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of MiMedx securities; and (iii) cause Plaintiff and other members of the Class to purchase MiMedx securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

44. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for MiMedx securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about MiMedx's finances and business prospects.

45. By virtue of their positions at MiMedx, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

46. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of MiMedx, the Individual Defendants had knowledge of the details of MiMedx internal affairs.

47. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

MiMedx. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to MiMedx's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of MiMedx securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning MiMedx's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased MiMedx securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

48. During the Class Period, MiMedx securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of MiMedx securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities, or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of MiMedx securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of MiMedx securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

49. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

50. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

51. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52. During the Class Period, the Individual Defendants participated in the operation and management of MiMedx, and conducted and participated, directly and indirectly, in the conduct of MiMedx's business affairs. Because of their senior positions, they knew the adverse non-public information about MiMedx's misstatement of income and expenses and false financial statements.

53. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to MiMedx's financial condition and results of operations, and to correct promptly any public statements issued by MiMedx which had become materially false or misleading.

54. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which MiMedx disseminated in the marketplace during the Class

Period concerning MiMedx's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause MiMedx to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of MiMedx within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of MiMedx securities.

55. Each of the Individual Defendants, therefore, acted as a controlling person of MiMedx. By reason of their senior management positions and/or being directors of MiMedx, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, MiMedx to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of MiMedx and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

56. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by MiMedx.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 19, 2015

**POMERANTZ LLP**

Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

***Attorneys for Plaintiff***

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1. I, LAWRENCE J. LONG, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against MiMedx, Inc. ("MiMedx" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire MiMedx securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired MiMedx securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in MiMedx securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed 1-8-2014
(Date)

(Signature)

LAWRENCE J. LONG
(Type or Print Name)

**MIMEDX GROUP INC (MDXG)**

**Long, Lawrence**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 12/22/2014 | PUR | 1,000 | $11.6800 |
| 12/22/2014 | PUR | 1,000 | $11.7300 |
| 12/22/2014 | PUR | 1,000 | $11.8300 |
| 12/22/2014 | PUR | 1,000 | $11.8400 |
| 12/22/2014 | PUR | 1,000 | $11.6400 |
| 12/31/2014 | SAL | 1,000 | $11.7400 |
| Dec 20 2014 17.50 C | | | |
| 12/22/2014 | PUR | 50 | $0.1500 |
| Jan 17 2015 15.00 C | | | |
| 11/28/2014 | PUR | 10 | $0.2000 |